IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

EVERETT T. PEONE                                                              PLAINTIFF

v.                         Case No. 2:12-cv-83 KGB

UNITED STATES OF AMERICA                                                      DEFENDANT

**OPINION AND ORDER**

Before the Court is defendant United States of America's motion for partial summary judgment (Dkt. No. 60). Plaintiff Everett Peone has filed a response in opposition and an amended response (Dkt. Nos. 63, 67). The government has filed a reply to Mr. Peone's responses (Dkt. No. 78).

Mr. Peone brings this action against the government for medical injury under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 267 *et seq.* The government moves for partial summary judgment over "any allegation regarding any act or omission" from Dr. David Weitzman (Dkt. No. 60, ¶ 11). The government asserts that it is entitled to sovereign immunity from any such allegation involving Dr. Weitzman. For the following reasons, the Court grants the government's motion for partial summary judgment.

   **I.    Factual Background**

Mr. Peone was an inmate at the Federal Correctional Complex in Forrest City, Arkansas ("FCC Forrest City"), in 2010. On March 6, 2010, Mr. Peone was doing extreme exercise when he heard a pop in his back and experienced immediate foot drop. Dr. David Weitzman made a provisional diagnosis of Mr. Peone on March 17, 2010, at 8:02 a.m., diagnosing Mr. Peone's injury as a spinal root compression (Dkt. No. 63-2, at 1). Dr. Hipolito Matos, the Clinical Director at FCC Forrest City, cosigned Dr. Weitzman's provisional diagnosis at 11:41 a.m. on

March 17, 2010 (*Id.* at 2).  On March 18, 2010, Mr. Peone had a clinical encounter with nurse Laurie Weyant, who stated that Mr. Peone has visual acuity changes (*Id.* at 3).  Ms. Weyant's note about the encounter was cosigned by Dr. Matos later on March 18, 2010.  Mr. Peone had a clinical encounter with nurse practitioner Laurie Conn on March 22, 2010, when Ms. Conn noted that Mr. Peone's foot drop had become worse and that Mr. Peone's pain continued (*Id.* at 6-7).  Ms. Conn prescribed that Mr. Peone take ibuprofen.  Dr. Matos did not cosign Ms. Conn's note regarding this encounter.

On April 6, 2010, Mr. Peone had severe back pain and visited Ms. Conn, who prescribed pain medication for Mr. Peone and requested that it be cosigned by Dr. Matos (Dkt. No. 63-2, at 9).  Dr. Matos cosigned the prescription and note of the encounter almost two hours later (*Id.* at 10).  Dr. Matos also cosigned a radiology report of Mr. Peone on April 6, 2010 (*Id.* at 11).  On April 7, 2010, Dr. Weitzman ordered Mr. Peone to be evaluated in the emergency room and to "make appropriate exams, labs, referrals and care. ASAP Consult" (*Id.* at 29).  Mr. Peone visited the Forrest City Medical Center Emergency Room on April 7, 2010, where he had a CT scan and was given a shot of Toradol in the emergency room.  Dr. Matos signed Mr. Peone's patient report from this visit to the Forrest City Medical Center on May 7, 2010 (*Id.* at 14-24).

After Mr. Peone returned from the emergency room, nurse Sheryl Phillips completed a note of a clinical encounter with Mr. Peone, indicating that he was given paperwork to have an MRI as soon as possible.  The note of the clinical encounter was requested to be cosigned by Dr. Matos and to be reviewed by Dr. Weitzman (*Id.* at 28).  Dr. Matos cosigned the note of the encounter on April 8, 2010 at 6:42 a.m., and Dr. Weitzman reviewed the note at 8:23 a.m., commenting that he "will see patient this AM" (*Id.*).  Dr. Weitzman completed a note of a

clinical encounter with Mr. Peone at 10:38 a.m. on April 8, 2010, and Dr. Matos cosigned the note at around 1:30 p.m. on April 9, 2010 (*Id.* at 35-36).

On April 13, 2010, Ms. Conn completed a note of a clinical encounter with Mr. Peone, indicating that she had prescribed him new medication (*Id.* at 39). This note was requested to be cosigned by Dr. Nader Peikar and to be reviewed by Dr. Weitzman. Dr. Weitzman reviewed the note at 12:53 p.m. on April 13, 2010, and Dr. Peikar cosigned the note at 4:50 p.m. on April 13, 2010. Ms. Conn also completed a note of a post-consultation encounter with Mr. Peone, in which she indicated that Mr. Peone had returned from an MRI and maintained severe pain in his lower back and right calf (Dkt. No. 63-2, at 44). On April 27, 2010, and May 7, 2010, Dr. Matos signed radiology reports dated April 13, 2010 (*Id.* at 45, 46). Dr. Weitzman completed another note of a clinical encounter with Mr. Peone at 1:43 on April 27, 2010, stating "Neurosurgical consult changed to ASAP" (*Id.* at 48), which Dr. Matos cosigned at 4:57 p.m. on April 27, 2010 (*Id.* at 47). Dr. Matos then completed an administrative note of a clinical encounter with Mr. Peone on April 29, 2010, indicating that "Dr. Parisoon called to inform that this inmate need to undertaken [sic] emergency surgery" and that "[t]he patient was admitted for emergency surgery of the lumbar spine" (*Id.* at 49).

In 2010, Dr. David Weitzman was employed by RGB Group, Inc. ("RGB") (Dkt. No. 78-1, at 11). RGB had a contract with the Bureau of Prisons ("BOP"), which was signed by Fernando Bravo, the Vice President of RGB (Dkt. No. 78-1) (the "Contract"). Emails from RGB staff to Kim Alston, the Senior Contract Specialist at FCC Forrest City, predating RGB's contract with the BOP, indicate that Ms. Alston would "modify the [C]ontract to add [Dr. Weitzman]" (Dkt. No. 78-1, at 11). The terms of RGB's Contract with BOP provided that RGB's physicians would "provide services, medical evaluations and treatment for the inmate

population during Chronic Care Clinics" (*Id.* at 8). The Contract states, "[t]his [C]ontract does not constitute an employer/employee relationship" (*Id.*). The Contract also defines the "scope of services" as follows:

> The Physician will be responsible for providing in-house medical consultation and evaluation services to chronic care ambulatory and general population inmates. Due to JCAHO regulations, as well as BOP Health Services policies, history and evaluations shall be completed as scheduled. Detailed medical record documentation must be maintained.
>
> Other specific duties may involve all aspects of health care delivery which will be performed in accordance with current accepted medical practices and procedures. The Physician will complete all data collection and referral report to the Clinical Director as required and in accordance to medical staff bylaws and Hospital and Bureau of Prison policy.

(*Id.*).

As for the "method of performance," the Contract provides:

> The services, being non-personal and professional in nature, will be provided in the method as considered appropriate in the local community. The services, although not directly supervised, shall be reviewed by a physician or psychologist on the staff of the Federal Correctional Complex to ensure contract compliance. Contract monitoring reports will be prepared by the COTR and maintained in the contract file.

(*Id.* at 9). The Contract also states that "[t]he provision of services under this proposed [C]ontract will require frequent and unsupervised contact with inmates" (*Id.*).

## II. Standard Of Review For Summary Judgment

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather,

4

the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).

"'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff.'" *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**III. Discussion**

Mr. Peone claims that his medical care providers at the BOP, including Dr. Weitzman and Dr. Matos, breached their standard of care under the Arkansas Medical Malpractice Act, Ark. Code Ann. § 16-114-201, *et seq.*, and in violation of the FTCA, through delayed diagnosis, delayed treatment, and delayed intervention. In its motion for partial summary judgment, the government contends that it is entitled to sovereign immunity from any allegation regarding any act or omission of Dr. Weitzman because he was an independent contractor with the BOP, not an employee of the United States. Mr. Peone maintains that, even if Dr. Weitzman was not an employee of the United States, the government may still be liable. He contends that, because Dr. Matos cosigned on Dr. Weitzman's treatment of Mr. Peone in March and April of 2010 and

5

acquiesced in the decisions about rendering treatment to Mr. Peone, the government had the "authority to control detailed physical performance of [the] contractor and supervise its day-to-day operations" and, thus, the government may be sued for the actions of Dr. Weitzman (Dkt. No. 67, ¶ 3). For the following reasons, the Court grants the government's motion for partial summary judgment as to allegations against Dr. Weitzman.

"The United States can only be sued when it has expressly given its consent to be sued." *Coleman v. Espy*, 986 F.2d 1184, 1189 (8th Cir. 1993) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). If the United States is entitled to sovereign immunity, the Court lacks subject matter jurisdiction. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see Green Acres Enters., Inc. v. U.S.*, 418 F.3d 852, 856 (8th Cir. 2005). In the FTCA, Congress created an express waiver of sovereign immunity, making the United States liable for the torts of its employees. 28 U.S.C. § 1346(b)(1); *Knudsen v. U.S.*, 254 F.3d 747, 750 (8th Cir. 2001). Nevertheless, this limited waiver of sovereign immunity does not apply to the actions of independent contractors. 28 U.S.C. § 2671; *Rutten v. United States*, 299 F.3d 993, 995 (8th Cir. 2002). Section 2671 states that employees of the government include "officers or employees of any federal agency," but that "the term 'Federal agency' . . . does not include any contractor with the United States." 28 U.S.C. § 2671.

Whether or not an individual is an independent contractor or an employee is a question of law. *Knudsen*, 254 F.3d at 750. "To determine whether an individual is an employee or contractor, the court must evaluate the extent to which the government has the power to supervise the individual's day-to-day operations." *Id*. "The crucial question is the amount of control exercised by the government over the physical performance of the individual." *Id.* Moreover, "federal funding or policing of federal standards and regulations does not create

employee status. The question to be answered is whether day-to-day operations are supervised by the Federal Government." *Bernie v. U.S.*, 712 F.2d 1271, 1273 (8th Cir. 1983); *see also Logue v. U.S.*, 412 U.S. 521, 527-28 (1973) ("[T]he critical factor . . . is the authority of the principal to control the detailed physical performance of the contractor."). "The contractual designation of the work status of a person is not conclusive for purposes of determining whether he is an employee or an independent contractor, when there is evidence to overcome such designation." *Wells v. Fedex Ground Packag Sys., Inc.*, 979 F. Supp. 2d 1006, 1021 (E.D. Mo. 2013); *See also Glascock v. Linn County Emerg. Med.*, 698 F.3d 695, 698 (8th Cir. 2012)

In contexts outside of the FTCA and the analysis of sovereign immunity, to determine whether an individual is an independent contractor or an employee, the Eighth Circuit has evaluated several non-exhaustive factors, including the skill required for the position; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. *Glascock*, 698 F.3d at 698 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)). Ultimately, courts look to the "economic realities" of the relationship and the terms of the agreement. *Id.*

When examining this issue in the context of physician independent contractors and the FTCA, the Eighth Circuit has evaluated the extent to which the government provides daily supervision of or control over "the physician's right to exercise independent medical judgment." *Knudsen*, 254 F.3d at 750 (upholding district court's finding that doctor was independent

contractor under the FTCA); *Bernie*, 712 F.2d 1273 (holding that physicians in private practice who provide contract services for Indian Health Service are not government employees under the FTCA because the Indian Health Service did not provide daily supervision nor did it control physicians' right to exercise independent medical judgment). Courts that have analyzed whether physicians are independent contractors or government employees emphasize that the "'government's ability to compel compliance with standards, rules and regulations [is] not important.'" *Garcia v. Reed*, 227 F.Supp.2d 1183, 1192 (D. N.M. 2002) (quoting *Del Valle v. Sanchez*, 170 F. Supp. 2d 1254, 1264-65 (S. D. Fla. 2001)); *see also Duplan v. Harper*, 188 F.3d 1195, 1201 (10th Cir. 1999) (holding that government's right to inspect work to determine if contract doctors meet minimum qualifications and for quality assurance does not automatically convert doctor into government employee).

Courts in other jurisdictions that have evaluated whether a physician is an independent contractor or government employee have also looked to the intent of the parties; whether the United States controls only the end result or may also control the manner and method of reaching the result; who provides liability insurance and pays social security tax; general statements concerning the manner and quality of service required under the contract; the ability of the government to control the prescription of drugs and medical supplies; the authority of the physician to make referrals; the percentage of the physician's total practice which is devoted to activities under the contract; and the nature of the compensation of the physician. *See Robb v. U.S.*, 80 F.3d 884, 890 (4th Cir. 1996); *Garcia*, 227 F. Supp. 2d at 1190-91. Although physicians under contract with the government are not automatically independent contractors, "the circuits have consistently held that physicians either in private practice or associated with an organization under contract to provide medical services to facilities operated by the federal

8

government are independent contractors, and not employees of the government for FTCA purposes." *Robb*, 80 F.3d at 890.

In this case, Dr. Weitzman was employed by RGB. Although RGB's Contract with the BOP states that Dr. Weitzman is to provide his care "in-house" at FCC Forrest City and that Dr. Weitzman is to complete data collection and referral reports and submit them to the Clinical Director, Dr. Matos, "in accordance to medical staff bylaws and Hospital and Bureau of Prison Policy" (Dkt. No. 78-1, at 8), the explicit terms of the Contract indicate that the contracting parties' intent was that Dr. Weitzman be an independent contractor. RGB's Contract with the BOP explicitly states: "This contract does not constitute an employer/employee relationship" (*Id.*). Furthermore, as noted above, the Contract states that the method of Dr. Weitzman's performance is that "considered appropriate in the local community" (*Id.*). The Contract also provides that Dr. Weitzman's services are not to be "directly supervised" and that they are "reviewed . . . to ensure contract compliance" (*Id.* at 9). Although pertaining to inmate contact, the Contract makes clear that Dr. Weitzman's day-to-day services with inmates will be "unsupervised" (*Id.*). Furthermore, the Contract also states that it "is [a] temporary contract for 120 work days" (*Id.* at 8). The Contract indicates that the government paid an award to RGB, not a salary or other compensation to Dr. Weitzman individually.

Mr. Peone argues that Dr. Matos, as the Clinical Director of FCC Forrest City, supervised Dr. Weitzman and sufficiently "directed his action" to overcome Dr. Weitzman's status as an independent contractor in RGB's contract with the BOP (Dkt. No. 64, at 6). Mr. Peone points to the fact that all of Dr. Weitzman's recommendations for treatments "had to be cosigned by Dr. Matos" (*Id.*). Mr. Peone also argues that "Dr. Matos had the ultimate authority to determine the care for Mr. Peone and when he acquiesced in the recommendations for treatment for Mr. Peone

9

he assumed the negligence of Dr. Weitzman" (*Id.*). Neither party has demonstrated to the Court Dr. Weitzman's discretion over when and how long to work, the tax treatment of Dr. Weitzman, who provides liability insurance and pays social security tax for Dr. Weitzman, or the percentage of Dr. Weitzman's total practice that is devoted to activities under the Contract.

Mr. Peone has provided no evidence that Dr. Matos actually directed or had the authority to direct the day-to-day physical conduct and performance of Dr. Weitzman, and his mere conclusion to the contrary is insufficient to overcome the government's motion for partial summary judgment on this issue. Although Dr. Matos had to cosign Dr. Weitzman's notes of clinical encounters with Mr. Peone, Dr. Weitzman's Contract indicates that such review is for contract compliance, which is not a factor that makes an independent contractor an employee of the government. *See Garcia*, 227 F. Supp. 2d at 1190-91. Mr. Peone has presented no evidence to show that the intent or purpose of Dr. Matos's cosigning was anything other than contract compliance or to control only the end result of the medical care; there is no record evidence to support a claim such acts were an attempt to control Dr. Weitzman's day-to-day activities and independent medical judgment. *Robb*, 80 F.3d at 890.

It is true, as Mr. Peone contends, that the contract is not determinative and that the test focuses on the "authority to control," not "actual control." *Bravo v. U.S.*, 532 F.3d 1154, 1159 (11th Cir. 2008); *Wells*, 979 F. Supp. 2d at 1021. Nonetheless, to meet his burden and overcome the contract's characterization of Dr. Weitzman's status and Dr. Matos's compliance review of Dr. Weitzman's activities, Mr. Peone must provide evidence that Dr. Weitzman's status and Dr. Matos's authority did not comport with the contract. *See Wells*, 979 F. Supp. 2d at 1021. Furthermore, the Eighth Circuit has emphasized "that the issue of control is less useful in the context of emergency room physicians than in some other settings because a hospital 'must

assert a degree of conflicting control over every doctor's work . . . to discharge its own professional responsibility to patients,' regardless [of] whether the physician is an employee or independent contractor." *Glascock*, 698 F.3d at 698 (holding that physician was independent contractor where control factor was inconclusive and other factors pointed to independent contractor status) (quoting *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 260 (4th Cir. 1997)).

Mr. Peone has pointed to no instance or allegation of Dr. Matos rejecting or overturning a recommendation made by Dr. Weitzman, nor has Mr. Peone shown that Dr. Matos was present when Dr. Weitzman evaluated Mr. Peone to direct Dr. Weitzman's performance or to control his medical judgment. The Court finds that evidence of Dr. Matos's cosigning notes of Mr. Weitzman's encounters with Mr. Peone—often several hours after the fact—is insufficient by itself to show that Dr. Matos directed or controlled, or had the authority to direct or control, Dr. Weitzman's performance or independent medical judgment. In short, Mr. Peone has neither provided record evidence nor pointed to any record facts to overcome Dr. Weitzman's status as an independent contractor under RGB's Contract with the BOP. Mr. Peone's bare allegations and conclusions that Dr. Matos directed and had the authority to direct Dr. Weitzman's activities are insufficient to distinguish this case from *Knudsen*, *Bernie*, or *Glascock*, or to overcome summary judgment. *See Smith*, 523 F.3d at 848; *Buford*, 747 F.2d at 447.

Accordingly, the Court finds that, based on the record facts before it, Dr. Weitzman was an independent contractor with the BOP and not an employee of the United States. Therefore, the United States maintains sovereign immunity as to any allegation regarding any act or omission of Dr. Weitzman. The Court makes no finding as to the individual liability of Dr. Matos or any other medical care provider for any medical evaluation or treatment of Mr. Peone

made or adopted during his course of treatment. Those issues are not before the Court, and different facts and circumstances may apply to those issues. The Court grants the government's motion for partial summary judgment as to any allegation regarding any act or omission of Dr. Weitzman.

**IV.  Conclusion**

For the foregoing reasons, the Court determines that the government is entitled to sovereign immunity from allegations against Dr. Weitzman. Therefore, the Court grants the government's motion for partial summary judgment and dismisses with prejudice Mr. Peone's claims against the government based on any allegation regarding any act or omission of Dr. Weitzman (Dkt. No. 60).

SO ORDERED this 31st day of March, 2015.

Kristine G. Baker
United States District Judge